## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

```
*****************************************
BRYAN MOORE, CLIFFORD KEEN,      *     CIVIL ACTION NO.: 17-5219
DAVID HANSON, SR., ROBERT JUGE,  *
JR., DAVID HANSON, JR., CHERYL   *
HANSON, SEAN BEAVERS, TAMMY      *
HANSON, STERLING HEBERT, JR.,    *
and JAMES FRANKLIN               *
                                 *      JUDGE:
VERSUS                           *
                                 *
RANDY SMITH, INDIVIDUALLY        *
and IN HIS OFFICIAL CAPACITY AS  *
SHERIFF OF ST. TAMMANY PARISH    *     MAGISTRATE:
*****************************************
```

### COMPLAINT

**NOW INTO COURT,** through undersigned counsel, come Plaintiffs, Bryan Moore, Clifford Keen, David Hanson, Sr., Robert Juge, Jr., David Hanson, Jr., Cheryl Hanson, Sean Beavers, Tammy Hanson, Sterling Hebert, Jr. and James Franklin, and respectfully represent as follows:

### PARTIES

1.

Plaintiff, **BRYAN MOORE**, is an individual of the age of majority, a resident of St. Tammany Parish and a citizen of the State of Louisiana.

2.

Plaintiff, **CLIFFORD KEEN**, is an individual of the age of majority, a resident of St. Tammany Parish and a citizen of the State of Louisiana.

3.

Plaintiff, **DAVID HANSON, SR.**, is an individual of the age of majority, a resident of St. Tammany Parish and a citizen of the State of Louisiana.

4.

Plaintiff, **ROBERT JUGE, JR.**, is an individual of the age of majority, a resident of St. Tammany Parish and a citizen of the State of Louisiana.

5.

Plaintiff, **DAVID HANSON, JR.**, is an individual of the age of majority, a resident of St. Tammany Parish and a citizen of the State of Louisiana.

6.

Plaintiff, **CHERYL HANSON**, is an individual of the age of majority, a resident of St. Tammany Parish and a citizen of the State of Louisiana.

7.

Plaintiff, **SEAN BEAVERS**, is an individual of the age of majority, a resident of St. Tammany Parish and a citizen of the State of Louisiana.

8.

Plaintiff, **TAMMY HANSON**, is an individual of the age of majority, a resident of St. Tammany Parish and a citizen of the State of Louisiana.

9.

Plaintiff, **STERLING HEBERT**, **JR.**, is an individual of the age of majority, a resident of St. Tammany Parish and a citizen of the State of Louisiana.

10.

Plaintiff, **JAMES FRANKLIN**, is an individual of the age of majority, a resident of St. Tammany Parish and a citizen of the State of Louisiana.

11.

Made Defendant herein is **RANDY SMITH**, individually, who upon information and belief, is an individual of the age of majority, a resident of St. Tammany Parish and a citizen of the State of Louisiana.

12.

Also made Defendant herein is **RANDY SMITH, IN HIS OFFICIAL CAPACITY AS SHERIFF OF ST. TAMMANY PARISH**, who upon information and belief, is an individual of the age of majority, a resident of St. Tammany Parish and a citizen of the State of Louisiana.

**JURISDICTION AND VENUE**

13.

Jurisdiction in this Court is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331 as the claims at issue arise out of 42 U.S.C. § 1983 *et seq* and 29 U.S.C. § 2601.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

14.

Defendant's residence and Louisiana business location are within the Eastern District of Louisiana, and at all times relevant to this Complaint, Defendant was engaged in commerce in the State of Louisiana.

3

15.

Venue is proper in this District pursuant to 28 U.S.C. § 1391, as Defendant's actions occurred in the Eastern District of Louisiana, Plaintiffs and Defendant reside in the Eastern District of Louisiana and the damages to Plaintiffs occurred in the Eastern District of Louisiana.

## FACTUAL BACKGROUND

16.

Plaintiffs are all former employees of the St. Tammany Parish Sheriff's Office (also known as "STPSO").

17.

Bryan Moore began his employment with the STPSO in 1998 as a deputy sheriff. Through the years, Mr. Moore was promoted on numerous occasions until he reached the position of Captain in 2011. During his 18 years of employment with the STPSO, Captain Moore served faithfully and competently.

18.

Clifford Keen began his employment with the STPSO in 1997 as a deputy sheriff. Through the years, Mr. Keen was promoted on numerous occasions until he reached the position of Major in 2015. During his 19 years of employment with the STPSO, Major Keen served faithfully and competently.

19.

David Hanson, Sr. began his employment with the STPSO in 1997 as a reserve deputy sheriff. Through the years, Mr. Hanson was promoted on numerous occasions until he reached

the position of Captain of the K-9 division in 2008.  During his 8 years of employment with the STPSO, Captain Hanson served faithfully and competently.

20.

Robert Juge, Jr. began his employment with the STPSO in 1989 as a Detective in the reserve division.  Through the years, Mr. Juge was promoted on numerous occasions until he reached the position of Captain in 2013.  During his 27 years of employment with the STPSO, Captain Juge served faithfully and competently.

21.

David Hanson, Jr. began his employment with the STPSO in 1998 as a correctional officer at the St. Tammany Parish jail.  Through the years, Mr. Hanson was promoted on numerous occasions until he reached the position of Captain in 2010.  During his 19 years of employment with the STPSO, Captain Hanson served faithfully and competently.

22.

Cheryl Hanson began her employment with the STPSO in 1997 as a bailiff.  Through the years, Mrs. Hanson was promoted to the position of Sergeant in 2004.  During her 19 years of employment with the STPSO, Sergeant Hanson served faithfully and competently.

23.

Sean Beavers began his employment with the STPSO in 2003 as a reserve deputy sheriff. Through the years, Mr. Beavers was promoted on numerous occasions until he reached the position of Sergeant in 2010.  During his 12 years of employment with the STPSO, Sergeant Beavers served faithfully and competently.

24.

Tammy Hanson began her employment with the STPSO in 1997 as a switchboard operator.  Through the years, Mrs. Hanson was employed as a switchboard operator, but was tasked with numerous administrative roles.  She was promoted to corporal in 2003.  During her 19 years of employment with the STPSO, Mrs. Hanson served faithfully and competently.

25.

Sterling Hebert, Jr. began his employment with the STPSO in 1988 as a corrections deputy.  Through the years, Mr. Hebert was promoted on numerous occasions until he reached the position of Major in 2010.  During his 28 years of employment with the STPSO, Major Hebert served faithfully and competently.

26.

James Franklin began his employment with the STPSO in 1994 as a criminal patrol deputy.  Through the years, Mr. Franklin was promoted on numerous occasions until he reached the position of Lieutenant in 2008.  After retiring in 2012, Mr. Franklin was rehired by the STPSO in 2015.  During his approximately 19 years of employment with the STPSO, Lieutenant Franklin served faithfully and competently.

27.

For 20 years, from 1996 – 2016, Rodney "Jack" Strain served as Sheriff of the St. Tammany Parish Sheriff's Office.

28.

In 2014/2015, Sheriff Strain ran for re-election as Sheriff of the St. Tammany Parish Sheriff's Office.

29.

At that same time, Defendant, Randy Smith, ran for election as Sheriff of the St. Tammany Parish Sheriff's Office.

30.

During Sheriff Strain's re-election campaign, Bryan Moore, Clifford Keen, David Hanson, Sr., Robert Juge, Jr., David Hanson, Jr., Cheryl Hanson, Sean Beavers, Tammy Hanson, Sterling Hebert, Jr. and James Franklin all significantly and publicly supported the campaign and re-election effort of Sheriff Strain.  Defendant was aware of Plaintiffs' support for Sheriff Strain.

31.

Bryan Moore publicly supported the re-election effort and campaign of Sheriff Jack Strain by donating money to Sheriff Strain's campaign, hanging campaign signs with David Hanson, Sr. in the Covington and Mandeville areas, placing a 4x8 campaign sign in his own yard, wearing campaign stickers on his clothing and attending numerous public meetings, rallies, fundraisers and events for the benefit of Sheriff Strain.

32.

Mr. Moore's support for Sheriff Strain's campaign and re-election effort was public and well known by Defendant and his supporters.

33.

Specifically, Mr. Moore attended the Concerned Citizens for St. Tammany debate in Lacombe while wearing "Re-Elect" Strain stickers on his shirt.  Defendant and his supporters were at the same debate and saw Mr. Moore supporting Sheriff Strain.

34.

Mr. Moore also attended the Alliance for Good Government debate and St. Tammany straw poll at Koop Drive while wearing "Re-Elect" Strain stickers on his shirt.  Defendant and his supporters were at the same events and saw Mr. Moore supporting Sheriff Strain.

35.

Mr. Moore also attended the St. Paul's School Jazz-N-Roll Gala, during which he walked the event with Sheriff Strain to meet and greet potential voters/supporters.  Defendant and his wife were at the event and saw Mr. Moore supporting Sheriff Strain.

36.

Mr. Moore's support for Sheriff Strain's campaign and re-election effort did not, however, affect the loyal and efficient performance of Mr. Moore's duties as an employee of the STPSO.

37.

Clifford Keen publicly supported the campaign and re-election effort of Sheriff Jack Strain by building and putting out campaign signs on highways and in the yards of other supporters, cooking at fundraisers for Sheriff Strain, attending football games and other public events to campaign for Sheriff Strain, going door-to-door to campaign for Sheriff Strain and waving signs on the side of the road in support of Sheriff Strain.

38.

Mr. Keen's support for Sheriff Strain's re-election effort and campaign was public and well known by Defendant and his supporters.

39.

Mr. Keen attended a republican gathering of all the candidates for Sheriff in support of Sheriff Strain. Defendant, who was also in attendance, saw Mr. Keen supporting Sheriff Strain and spoke to Mr. Keen at the event.

40.

Mr. Keen attended numerous local sporting events (including Covington High football games) to campaign for Sheriff Strain. While at those events, Mr. Keen often saw and interacted with Defendant's supporters.

41.

Mr. Keen attended a Whitetail Unlimited banquet, at which he spoke to Defendant and explained to him that he was supporting Sheriff Strain.

42.

Mr. Keen also attended the Concerned Citizens for St. Tammany debate in Lacombe while wearing "Re-Elect" Strain stickers on his shirt. Defendant and his supporters were at the same debate and saw Mr. Keen supporting Sheriff Strain.

43.

Mr. Keen organized fundraisers for Sheriff Strain, which were publicized and well known events.

44.

Mr. Keen made inquiries to Defendant and his supporters about the status of his job after Defendant was elected. Kline Mathies attempted to set up a meeting with Mr. Keen and Jeff Boehm (one of Defendant's close supporters) to discuss Mr. Keen's employment. Ultimately,

however, Mr. Keen was told by Mr. Mathies that Mr. Boehm stated there was no use in meeting, as Defendant did not intend to renew Mr. Keen's commission.

45.

During one of the first meetings between Defendant and Sheriff Strain after the election, Defendant told Sheriff Strain that he would not be renewing the commissions of Mr. Keen (and Brad Hassert) because of their support for Sheriff Strain during the campaign.

46.

Mr. Keen's support for Sheriff Strain's re-election effort and campaign did not, however, affect the loyal and efficient performance of Mr. Keen's duties as an employee of the STPSO.

47.

David Hanson, Sr. publicly supported the campaign and re-election effort of Sheriff Jack Strain by constructing and installing campaign signs throughout St. Tammany Parish, wearing Sheriff Strain campaign T-shirts, accompanying Sheriff Strain to numerous public debates, fundraisers, meetings, interviews and functions (some of which were attended by Defendant), riding on Sheriff Strain's Mardi Gras campaign/re-election float, pulling the campaign float in the St. Tammany Parish fair parade and donating to Sheriff Strain's campaign.

48.

Mr. Hanson's support for Sheriff Strain's re-election effort and campaign was public and well known by Defendant and his supporters. Defendant was in attendance at many of the public meetings, rallies and events where Mr. Hanson visibly and vocally supported Sheriff Strain.

49.

For example, Mr. Hanson drove Sheriff Strain to a WWL TV interview where only he, Sheriff Strain, Defendant and Defendant's driver were present.  Defendant approached Mr. Hanson at the interview and acknowledged his presence at the interview with Sheriff Strain.

50.

Mr. Hanson also attended and drove Sheriff Strain to a Ducks Unlimited banquet in Mandeville.  Defendant was also at the event and saw Mr. Hanson with Sheriff Strain and was aware that Mr. Hanson drove Sheriff Strain to the event.

51.

Mr. Hanson also rode on "Re-Elect Sheriff Strain" Mardi Gras floats with Sheriff Strain in parades where Defendant was also present and observed Mr. Hanson on the float with Sheriff Strain.

52.

Mr. Hanson's support for Sheriff Strain's re-election effort and campaign did not, however, affect the loyal and efficient performance of Mr. Hanson's duties as an employee of the STPSO.

53.

Robert Juge, Jr. publicly supported the campaign and re-election effort of Sheriff Strain by helping arrange and set-up Sheriff Strain's campaign headquarters in Slidell, obtaining a storage facility to keep campaign signs, building campaign signs and replacing or fixing damaged or stolen campaign signs, placing and delivering campaign signs to numerous locations, displaying campaign signs in his own yard, soliciting support from individuals and businesses for Sheriff Strain, waving signs on election days, donating money to Sheriff Strain's campaign,

wearing Sheriff Strain campaign t-shirts, hats, etc., attending numerous public meetings where Sheriff Strain (and Defendant) spoke and arranging for Sheriff Strain to speak at various events.

54.

Mr. Juge's support for Sheriff Strain's re-election effort and campaign was public and well known by Defendant and his supporters. Defendant and/or his supporters were in attendance at many of the public meetings, rallies and events where Mr. Juge visibly and vocally supported Sheriff Strain.

55.

Specifically, Mr. Juge was standing on the corner of Gause Boulevard and Front Street on election day waiving campaign signs and wearing a campaign t-shirt when Randy Smith rode by and pointed his finger at Mr. Juge.  Earlier that same day, Mr. Juge was placing Sheriff Strain campaign signs on Military Road in Slidell, Louisiana and saw and spoke to one of Defendant's primary supporters, Gary Knight.

56.

In addition, Mr. Juge was at Sheriff Strain's campaign headquarters in Slidell, Louisiana (in the parking lot) when one of Defendant's supporters, "Duffy," approached him and complained about Defendant's campaign signs being taken down.  Upon information and belief, the individual known as "Duffy" is/was a close confidant of Defendant.

57.

On August 20, 2015 while attending a pep rally at the Slidell City Auditorium for the New Orleans Saints, Defendant, who was also in attendance, approached Bobby Juge who was at the pep rally to support and campaign for Sheriff Strain.  After approaching Mr. Juge, Defendant looked at Mr. Juge, pointed his finger at Mr. Juge and said "you're fired."  When Mr. Juge

questioned Defendant regarding his threat to fire him, Defendant laughed and walked away. Defendant ultimately made good on his threat by not renewing Mr. Juge's commission.

58.

Finally, while Mr. Juge was working a detail at the "Jazz on the Bayou" event, Mr. Juge saw Defendant's wife, Adele Smith, and told her "good afternoon."   In response, Defendant's wife accused Mr. Juge of being "two faced" and stormed off.

59.

Mr. Juge's support of Sheriff Strain was also visibly apparent on social media, in particular Facebook, to which Defendant had access.  Mr. Juge posted numerous photos at campaign events which were shared by friends and easily viewable by Defendant.

60.

Mr. Juge's support for Sheriff Strain's re-election effort and campaign did not, however, affect the loyal and efficient performance of Mr. Juge's duties as an employee of the STPSO.

61.

David Hanson, Jr. publicly supported the re-election effort and campaign of Sheriff Strain by participating as a member of Sheriff Strain's sign building campaign committee, making and installing campaign signs, donating to Sheriff's Strain's campaign, distributing campaign literature and canvassing and asking voters to support Sheriff Strain.

62.

Mr. Hanson's support for Sheriff Strain's re-election effort and campaign was public and well known by Defendant and his supporters.

63.

Mr. Hanson's support for Sheriff Strain's re-election effort and campaign did not, however, affect the loyal and efficient performance of Mr. Hanson's duties as an employee of the STPSO.

64.

Cheryl Hanson publicly supported the campaign and re-election effort of Sheriff Strain by wearing campaign t-shirts, hats and jackets, standing on the side of the road waiving signs, walking neighborhoods and knocking on doors asking people to support Sheriff Strain, making telephone calls to potential voters/supporters and attending numerous public events and fundraisers in an effort to raise money and support for Sheriff Strain's campaign.

65.

Mrs. Hanson's support for Sheriff Strain's re-election effort and campaign was public and well known by Defendant and his supporters.

66.

Mrs. Hanson placed Sheriff Strain magnets on her vehicle that was publicly visible by Defendant and/or his supporters.

67.

Mrs. Hanson worked in the same office with Gary Ranatza, one of Defendant's close friends.  While they worked together, they often talked about the election and Mrs. Hanson's support for Sheriff Strain.

68.

While waiving campaign signs one day on the side of the street during the primary election, Defendant's supporters were across the street and saw Mrs. Hanson supporting Sheriff Strain.

69.

Mrs. Hanson also attended the Wooden Boat Festival in Madisonville while wearing a Sheriff Strain T-shirt and handing out campaign flyers and balloons.

70.

Mrs. Hanson's support for Sheriff Strain's re-election effort and campaign did not, however, affect the loyal and efficient performance of Mrs. Hanson's duties as an employee of the STPSO.

71.

Sean Beavers publicly supported the re-election effort and campaign of Sheriff Strain by donating money to Sheriff Strain's campaign, attending all political fund raisers for Sheriff Strain, personally driving Sheriff Strain to political/social events, eating lunch daily with Sheriff Strain, riding on Sheriff Strain's campaign/re-election float in the Slidell Mardi Gras Parade in 2015 (while wearing a re-election T-shirt and throwing re-election campaign cups).  Mr. Beavers was also approached by one of Defendant's supporters and asked if he needed any Randy Smith campaign signs, but advised the supporter that he supported Sheriff Strain.

72.

Mr. Beavers' support for Sheriff Strain's re-election effort and campaign was public and well known by Defendant and his supporters. Defendant was in attendance at many of the public meetings, rallies and events where Mr. Beavers visibly and vocally supported Sheriff Strain.

73.

On one occasion during the runoff portion of the election, Mr. Beavers was contacted by Alvin Holley, an avid supporter and confidant of Defendant, who asked Mr. Beavers if he (Mr. Beavers) needed any Randy Smith election signs.  Mr. Holley told Mr. Beavers that he obtained Mr. Beavers' phone number from Defendant.  Mr. Beavers told Mr. Holley not to waste his time trying to get him to change his support from Sheriff Strain to Defendant.

74.

Mr. Beavers rode on the campaign float with Sheriff Strain in the Dionysus parade in Slidell.  Defendant was also in the parade and saw Mr. Beavers on the Sheriff Strain float wearing a Sheriff Strain shirt.

75.

Mr. Beavers' support for Sheriff Strain's re-election effort and campaign did not, however, affect the loyal and efficient performance of Mr. Beavers' duties as an employee of the STPSO.

76.

Tammy Hanson publicly supported the campaign and re-election effort of Sheriff Strain by distributing campaign literature, attending campaign events/community functions (Lacombe Crab Fest, Madisonville Wooden Boat Festival, St. Tammany Parish Fair, Bush Fall Fest), placing campaign signs in her own yard, speaking to others in support of Sheriff Strain, donating money to Sheriff Strain's campaign, wearing campaign T-shirts.

77.

Mrs. Hanson's support for Sheriff Strain's re-election effort and campaign was public and well known by Defendant and his supporters.  Defendant and/or his supporters were in

attendance at many of the public meetings, rallies and events where Mrs. Hanson visibly and vocally supported Sheriff Strain.

78.

Mrs. Hanson's support for Sheriff Strain's re-election effort and campaign did not, however, affect the loyal and efficient performance of Mrs. Hanson's duties as an employee of the STPSO.

79.

Sterling Hebert publicly supported the campaign and re-election effort of Sheriff Strain by donating money to Sheriff Strain's campaign, attending numerous public meetings, debates, rallies and events, passing out campaign literature, canvassing neighborhoods, placing and removing election day polling location signs, building and repairing campaign signs and putting out/delivering campaign signs for Sheriff Strain's campaign.

80.

Mr. Hebert's support for Sheriff Strain's re-election effort and campaign was public and well known by Defendant and his supporters.

81.

Mr. Hebert was also in attendance at the pep rally at the Slidell City Auditorium for the New Orleans Saints when Defendant, who was also in attendance, approached him, pointed his finger at Mr. Hebert and said "you're fired."   Mr. Hebert was at the event wearing a Sheriff Strain shirt in support of Sheriff Strain.   Defendant made good on his threat by not renewing Mr. Hebert's commission.

82.

Mr. Hebert attended the Wild Things Festival hosted by the La. Department of Wildlife and Fisheries in Lacombe to support Sheriff Strain's campaign.  Defendant was at the event and spoke to Mr. Hebert by the back of Mr. Hebert's vehicle, which had two Sheriff Strain signs prominently displayed on the tailgate.

83.

Mr. Hebert attended the Covington Block Party and passed out Sheriff Strain campaign literature while wearing a Sheriff Strain shirt.  Mr. Hebert spoke with Defendant's supporters at Defendant's campaign table at the same event.

84.

Mr. Hebert represented Sheriff Strain at a homeowner's association meeting held at Oak Harbor and spoke on behalf of Sheriff Strain and passed out campaign literature.

85.

Mr. Hebert's support for Sheriff Strain's re-election effort and campaign did not, however, affect the loyal and efficient performance of Mr. Hebert's duties as an employee of the STPSO.

86.

James Franklin publicly supported the campaign and re-election effort of Sheriff Jack Strain by wearing campaign t-shirts, hats, etc. in public, attending numerous public events, meetings, fundraisers, etc. for Sheriff Strain and constructing and hanging campaign signs on an almost daily basis in the weeks prior to the election.

87.

Mr. Franklin's support for Sheriff Strain's re-election effort and campaign was public and well known by Defendant and his supporters.

88.

Mr. Franklin (and his wife) was also in attendance at the pep rally at the Slidell City Auditorium for the New Orleans Saints when Defendant, who was also in attendance, approached him, pointed his finger at Mr. Franklin and said "you're fired." Mr. Franklin was at the event wearing a Sheriff Strain shirt in support of Sheriff Strain. Defendant made good on his threat by not renewing Mr. Franklin's commission.

89.

Defendant was also in attendance at many of the other public meetings, rallies and events where Mr. Franklin visibly and vocally supported Sheriff Strain.

90.

Mr. Franklin's support for Sheriff Strain's re-election effort and campaign did not, however, affect the loyal and efficient performance of Mr. Franklin's duties as an employee of the STPSO.

91.

Ultimately, the support for Sheriff Strain's campaign and re-election effort, as set forth herein above, was the sole basis for Defendant's decision to not renew Plaintiffs' commissions.

92.

Plaintiffs' reserve the right to set forth other instances demonstrating Plaintiffs' public support for Sheriff Strain during his most recent campaign and re-election effort, as well as Defendant's (and his supporters') knowledge of that support, once discovery begins.

## CAUSES OF ACTION

### I.      VIOLATION OF 42 U.S.C. § 1983

93.

42 U.S.C. § 1983 states that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

94.

Defendant, Randy Smith, individually, is a "person" within the meaning of 42 U.S.C. § 1983.

95.

Defendant, Randy Smith, in his official capacity as Sheriff of St. Tammany Parish, is also a "person" within the meaning of 42 U.S.C. § 1983.

96.

Plaintiffs, Bryan Moore, Clifford Keen, David Hanson, Sr., Robert Juge, Jr., David Hanson, Jr., Cheryl Hanson, Sean Beavers, Tammy Hanson, Sterling Hebert, Jr. and James Franklin are all "citizen[s] of the United States" within the meaning of 42 U.S.C. § 1983.

97.

As set forth fully herein above and below, Defendant willfully, and under color of state law, abridged Plaintiffs' rights guaranteed by the United States Constitution by refusing to renew their commissions because of their support for Sheriff Jack Strain's campaign and re-election effort.

98.

Specifically, Defendant violated Plaintiffs' right to freedom of political speech, guaranteed by the First Amendment to the United States Constitution, by refusing to renew their commissions because of their support of Sheriff Jack Strain's campaign.

99.

Plaintiffs' support of Sheriff Jack Strain, as detailed above, was a matter of public concern as it constituted expression of a wide variety of political activity.  "There can be no question that . . . campaigning for a political candidate . . . relate[s] to a matter of public concern." *Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995).

100.

Furthermore, Plaintiffs' interests in commenting on matters of public concern (through the expression of political activity as set forth herein above) outweighed any interest the STPSO and/or Defendant had in promoting the efficiency of the public service performed by Plaintiffs. Plaintiffs' support of Sheriff Strain did not affect the efficiency of the public service performed by Plaintiffs.

101.

None of the positions held by Plaintiffs were such that "political loyalty" was a necessary prerequisite of the job or necessary to Plaintiffs performing the job competently and professionally.

102.

Regardless, none of the Plaintiffs were provided an opportunity to work for Defendant and prove any request for "loyalty."  Rather, because Plaintiffs had previously supported Sheriff Strain's campaign, their commissions were not renewed by Defendant.

103.

At the time Defendant refused to renew Plaintiffs' commissions, the law was well settled that a sheriff could not terminate or refuse to renew an employee's commission because of the employee's political support of a rival candidate. *See e.g., Brady v. Fort Bend County*, 145 F.3d 691 (1998). Defendant either knew or should have known of such law, but ignored the law in refusing to renew Plaintiffs' commissions.

104.

Defendant's actions in refusing to renew Plaintiffs' commissions reflected the custom, usage, policy and practice of the STPSO, as established by Defendant.

105.

Alternatively, Defendant was the final policymaker with respect to the decision to not renew the commissions of Plaintiffs, and as such, utilized that authority in making the decision not to renew Plaintiffs' commissions because of their public and known support of Sheriff Strain's campaign.

106.

Defendant made the decision to not renew Plaintiffs' commissions based solely on their political support for Sheriff Strain. Moreover, upon information and belief, said decision was made prior to Defendant assuming office.

107.

As the direct and proximate cause of Defendant's illegal actions in violating Plaintiffs' rights under the United States Constitution, Plaintiffs sustained damages, including, but not limited to special damages (back pay, lost benefits, front pay, loss of future earnings), general

damages (emotional distress, annoyance, loss of enjoyment of life, embarrassment and humiliation), punitive damages (to the extent allowed by law) and all costs and attorney's fees.

## II.     VIOLATON OF LA. R.S. 23:961

### 108.

Defendant, in his official capacity as Sheriff of St. Tammany Parish, was Plaintiffs' employer pursuant to La. R.S. 23:961.

### 109.

Defendant employed more than 20 employees during all relevant times herein.

### 110.

Defendant, in his official capacity as Sheriff of St. Tammany Parish, implemented a rule/policy in which the commissions of several employees that supported the campaign and re-election of Sheriff Jack Strain were not renewed because of that support.

### 111.

The rule/policy implemented by Defendant punished Plaintiffs for engaging and/or participating in politics, namely the campaign and re-election of Sheriff Jack Strain.

### 112.

The rule/policy implemented by Defendant likewise tended to control or direct the political activities or affiliations of STPSO employees, and had the result of coercing and influencing, by means of loss of employment, because of support provided by Plaintiffs to the campaign and re-election of Sheriff Jack Strain.

113.

As the direct and proximate cause of Defendant's illegal actions in violating La. R.S. 23:961, Plaintiffs sustained damages, including, but not limited to special damages (back pay, lost benefits, front pay, loss of future earnings), general damages (emotional distress, annoyance, loss of enjoyment of life, embarrassment and humiliation) and all costs and attorney's fees.

### III.    VIOLATON OF 29 U.S.C. § 2601 *ET SEQ*.

114.

The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(1) provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

115.

Defendant, in his official capacity as Sheriff of St. Tammany Parish, was Plaintiffs' employer pursuant to 29 U.S.C. § 2609, *et seq*.

116.

Defendant employed more than 50 employees during all relevant times at the location(s) where Plaintiffs worked.

117.

Plaintiffs Bryan Moore, Clifford Keen and Cheryl Hanson were eligible employees pursuant to the terms of the FMLA, as they all worked for Defendant for more than 12 months, they worked more than 1,250 hours over the 12 months prior to their FMLA leave, and worked at a location where at least 50 employees were employed by Defendant.

118.

Defendant is subject to the terms and requirements set forth in the FMLA.

119.

Plaintiffs Bryan Moore, Cliff Keen and Cheryl Hanson were entitled to FMLA leave, and in fact had their FMLA leave approved by the STPSO prior to their leave beginning.

120.

Plaintiffs Bryan Moore, Cliff Keen and Cheryl Hanson gave proper notice of their intent to take FMLA leave, and as stated above, had their FMLA leave approved by the STPSO prior to their leave beginning.

121.

Bryan Moore began his FMLA leave on or about June 22, 2016.

122.

Cliff Keen began his FMLA leave on or about June 20, 2016.

123.

Cheryl Hanson began her FMLA leave on or about June 20, 2016.

124.

Shortly before the expiration of his leave, Bryan Moore received a letter from the STPSO advising him that his commission would not be renewed, effectively terminating his employment, upon the expiration of his FMLA leave.

125.

Bryan Moore was not provided an opportunity to return to work in the same or similar position he occupied prior to his leave.

126.

Shortly before the expiration of his leave, Cliff Keen contacted the STPSO to discuss his desire to return to work.

127.

After his inquiries were repeatedly ignored, Cliff Keen was ultimately advised "not to bother" with speaking to his physician about a obtaining a return to work, as his commission was not being renewed, effectively terminating his employment.

128.

Cliff Keen was not provided an opportunity to return to work in the same or similar position he occupied prior to his leave.

129.

At the expiration of her FMLA leave, Cheryl Hanson attempted to return to work.  Upon reporting to work after the expiration of her leave, she was advised that her commission was not being renewed, effectively terminating her employment.

130.

Cheryl Hanson was not provided an opportunity to return to work in the same or similar position she occupied prior to her leave.

131.

By refusing to return Bryan Moore, Cliff Keen and Cheryl Hanson to the same or similar positions they occupied prior to their leave, Defendant interfered with Plaintiffs' rights pursuant to 29 U.S.C. § 2614(a), which states:

> Except as provided in subsection (b) of this section, any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave--

(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
(B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

132.

As a result of Defendant's interference with Plaintiffs' rights under the FMLA, Plaintiffs were prejudiced in that they lost compensation, benefits and other rights and privileges of employment.

133.

As the direct and proximate cause of Defendant's illegal actions in interfering with Plaintiffs' rights pursuant to the FMLA, Plaintiffs sustained damages, including, but not limited to special damages (back pay, lost benefits, front pay, loss of future earnings), general damages (emotional distress, annoyance, loss of enjoyment of life, embarrassment and humiliation), and are also entitled to liquidated damages, costs and attorney's fees.

## **JURY DEMAND**

134.

Plaintiffs hereby demand a trial by jury on all issues triable by jury.

**WHEREFORE**, Plaintiffs pray that Defendant, Randy Smith, in his individual capacity, as well as in his official capacity as Sheriff of St. Tammany Parish, be served with a copy of the Complaint and be cited to appear and answer same and that after due proceedings are had, that judgment be rendered in favor of Plaintiffs and against Defendant, in an amount to compensate

Plaintiffs for all damages, penalties, interest, costs and attorney's fees, to which they are entitled

by law, and for such other damages and relief as this Court may deem just and proper.


Respectfully submitted,

**THE DEMMONS LAW FIRM, LLC.**


　　　s/Larry E. Demmons
**LARRY E. DEMMONS** (#24376)
3201 Ridgelake Drive
Metairie, Louisiana 70002
Telephone: (504)-296-6417
Facsimile:  (504)-335-0749

**COUNSEL FOR PLAINTIFFS**