UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRYAN MOORE, ET AL.                    CIVIL ACTION

VERSUS                                 No. 17-5219

RANDY SMITH                            SECTION: "J"(2)

## ORDER AND REASONS

Before the Court are Defendant, Sheriff Randy Smith's *Motion to Dismiss for Failure to State a Claim* **(Rec. Doc. 8)**, an opposition thereto filed by Plaintiffs (Rec. Doc. 16) and Sheriff Smith's reply. (Rec. Doc. 54). Having considered the Motion and legal memoranda, the record, and the applicable law, the Court finds that the Motion should be **DENIED in part** and **GRANTED in part**.

## FACTS AND PROCEDURAL BACKGROUND

This matter arises from the 2015 St. Tammany Parish Sheriff's election in which Defendant, Randy Smith ('Sheriff Smith'), challenged the then-incumbent sheriff, Rodney "Jack" Strain ("former Sheriff Strain"). Plaintiffs[1] served as deputy sheriffs under Sheriff Strain and campaigned on his behalf during the election. Specifically, Plaintiffs allege that they solicited votes door-to-door, wore campaign apparel, distributed yard signs, and attended public fundraisers and events in

---

[1] Ten deputies originally filed suit against Sheriff Smith in this action. Three deputies, David Hanson, Jr., David Hanson, Sr., and Tammy Hanson voluntarily dismissed their claims on September 28, 2018. Another deputy, Clifford Keen, voluntarily dismissed on December 13, 2018. The Plaintiffs are now Bryan Moore, Robert Juge, Jr., Cheryl Hanson, Sean Beavers, Sterling Hebert, Jr., and James Franklin.

support of Sheriff Strain. Despite their vigorous campaign efforts, Defendant won the election on November 21, 2015. Pursuant to Louisiana law, Plaintiffs' terms as deputies expired automatically when former Sheriff Strain's tenure of office ended on July 1, 2016, the date Sheriff Smith was sworn into the office. Upon assuming office Sheriff Smith did not reinstate Plaintiffs to their former positions as deputy sheriffs, which Plaintiffs allege to be an act of retaliation by Sheriff Smith because he resented their support of his political opponent.

On May 25, 2017, Plaintiffs filed suit against Sheriff Smith, individually and in his official capacity, asserting 42 U.S.C. § 1983 claims for violation of their First Amendment rights to free speech and political expression. The Plaintiffs also assert state law violations pursuant to La. Rev. Stat. § 23:961. Additionally, two of the Plaintiffs[2]—Bryan Moore and Cheryl Hanson—filed claims under the Family and Medical Leave Act ("FMLA"), averring that they were entitled to return to their positions when their leave ended under Sheriff Smith's administration because they were employed by the sheriff's department under Sheriff Strain at the time they took their leave. Plaintiffs assert the state law and FMLA claims against Defendant only in his official capacity.

Defendant filed a *Motion to Dismiss* arguing that Plaintiffs' complaint failed to state any claims upon which relief could be granted. (Rec. Doc. 8.) Plaintiffs filed an opposition to Defendant's motion, arguing that the complaint provided more than

_____

[2] Originally, three plaintiffs asserted FMLA claims, but Clifford Keen voluntarily dismissed his FMLA claim.

adequate facts to survive a motion to dismiss and requesting leave to amend the pleadings, if necessary. (Rec. Doc. 16). Defendant filed a reply. (Rec. Doc. 54). The Motion is now before the Court on the briefs and without oral argument.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal citations omitted). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true

legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

When examining matters of state law, this Court will employ the principles of interpretation used by the state's highest court. *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010). Mindful of Louisiana's distinction between primary and secondary sources of law, the Court will begin its analyses with reliance on the Louisiana Constitution and statutes before looking to "jurisprudence, doctrine, conventional usages, and equity, [which] may guide the court in reaching a decision in the absence of legislation and custom." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 547 (5th Cir. 2004) (quoting La. Civ. Code. art. 1 rev. cmt. b). If the Court must make an "Erie guess" on an issue of Louisiana law, the Court will decide the issue the way that it believes the Supreme Court of Louisiana would decide it. *Id.* (citation omitted). This Court is not strictly bound by the decisions of the state intermediate courts and will disregard them if the Court is "convinced that the Louisiana Supreme Court would decide otherwise." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).

## **DISCUSSION**

Collectively, Plaintiffs allege three claims against Chief Smith, each deriving from a different source of law: (1) § 1983 claims for violation of their First Amendment rights, (2) state law claims, and (3) claims under the Family and Medical Leave Act ("FMLA"). While Sheriff Smith attacks the factual basis of some of Plaintiffs' claims

as insufficient and raises qualified immunity, a common argument he raises in defense to all these claims is the special relationship between sheriffs and deputies in Louisiana.

Courts have recognized that according to Louisiana law, there is no such thing as a "Parish Sheriff's Department"; rather, every newly-elected sheriff creates his own department, which he leads in his official capacity as a political subdivision of Louisiana. *See, e.g.*, *Liberty Mut. Ins. Co. v. Grant Par. Sheriff's Dept.*, 350 So. 2d 236, 238 (La. App. 3d Cir. 1977) (overruled on other grounds); *see also* La. Rev. Stat. § 13:5102(B)(1). Given their status as relatively independent subdivisions of the state, sheriffs enjoy a great degree of control over their deputies. "The sheriff, and not the state, hires and fires deputies, exercises direct and indirect supervision and control over them, fixes their time and place of work, and generally allocates their responsibility and assigns their duties." *Jenkins v. Jefferson Par. Sheriff's Off.*, 402 So. 2d 669, 671 (La. 1981); *see also Boyer v. St. Amant*, 364 So. 2d 1338, 1340 (La. App. 4th Cir. 1978) ("[A] deputy sheriff has no statutorily prescribed term of office, but merely serves at the pleasure of the sheriff."). The term of a deputy expires with the tenure of the sheriff who hired him. *See Adams v. McDougal*, 695 F.2d 104, 106 (5th Cir. 1983).

Thus, when Plaintiffs' commissions expired at the end of former Sheriff Strain's term, it was solely within Sheriff Smith's discretion whether to rehire the Plaintiffs. Plaintiffs counter that Sheriff Smith's right not to reappoint them was constrained by the United States Constitution, Louisiana statutory law, and

congressional enactment. The Court must therefore examine in each of these three contexts what meaning, if any, should be given to the fact that when Sheriff Smith took office, a new subdivision of the state was effectively formed. The Court will examine each of Plaintiffs' claims in turn.

## I.     FIRST AMENDMENT CLAIMS UNDER § 1983

Plaintiffs allege that they were improperly dismissed for their support of Sheriff Smith's political rival. The U.S. Supreme Court has held that the First Amendment does not allow "a nonpolicymaking, nonconfidential government employee [to] be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." *Elrod v. Burns*, 427 U.S. 347, 375 (1976) (Stewart, J., concurring). There is no doubt that then, that the U.S. Constitution does curtail what appears to be the plenary authority of Louisiana sheriffs in hiring and firing. *Adams v. McDougal*, 695 F.2d 104, 105-08 (5th Cir. 1983). Furthermore, the federal courts have long rejected the argument that newly-elected sheriffs are not subject to this First Amendment limitation simply because they must rehire deputies at the beginning of their tenure. "For [First Amendment purposes], there is no difference between firing and declining to re-appoint." *Brady*, 145 F.3d at 703 (quoting *Warnock v. Pecos County*, 116 F.3d 776, 779 n. 1 (5th Cir. 1997)). Accordingly, courts have found that a deputy has a valid claim under § 1983, if he was not re-commissioned because he expressed support for an elected sheriff's opponent. *See e.g.*, *Smith v. Par. of Washington*, 318 F. Supp. 2d 366, 381 (E.D. La. 2004).

### a. Facial Plausibility of Plaintiffs' Claims

Sheriff Smith apparently concedes that it would violate the Plaintiffs' constitutional rights to decline rehiring them on the basis of their political support for former Sheriff Strain; he instead argues that there is an insufficient factual basis for their claims. Specifically, Sheriff Smith argues that the § 1983 claims fail, because each of the Plaintiffs have failed to put forth sufficient facts demonstrating a political motive behind their respective terminations.[3] Defendant admits that each of the Plaintiffs provided sufficient factual allegations that they supported Sheriff Strain during his re-election efforts. However, Sheriff Smith contends that he recommissioned hundreds of deputies who served under Sheriff Strain, "some of whom [he] likely would have recognized as supporting former Sheriff Strain." (Rec. Doc. 8-1 at 4). Thus, Sheriff Smith argues that the Plaintiffs' allegations that they were not recommissioned due to that political activity are "rank speculation."

Sheriff Smith's position appears to be that dismissal is appropriate unless a plaintiff alleges that he flat out told the deputy he was firing him or her out of political animus.[4] This is obviously does not capture the level of scrutiny applied at the

---

[3] Sheriff Smith only challenges the plausibility of the last of the four elements of a free speech retaliation claim: "(1) the plaintiff must suffer an adverse employment decision; (2) the plaintiff's speech must involve a matter of public concern; (3) the plaintiff's interest in commenting on matters of public concern must outweigh the defendant's interest in promoting efficiency; and (4) *the plaintiff's speech must have motivated the defendant's actions.*" *Cox v. Kaelin*, 577 Fed. Appx. 306, 310 (5th Cir. 2014) (per curiam) (quoting *Finch v. Fort Bend Indep. School Dist.*, 333 F.3d 555, 563 (5th Cir. 2003)).
[4] Sheriff Smith reluctantly conceded that Mr. Keen's now-voluntarily dismissed claim could not be dismissed under 12(b) only because the complaint alleges, "During one of the first meetings between Defendant and Sheriff Strain after the election, Defendant told Sheriff Strain that he would not be renewing the commissions of Mr. Keen (and Brad Hassert) because of their support for Sheriff Strain during the campaign." (Rec. Doc. 1 at 10).

12(b)(6) stage. Moreover, direct evidence of discriminatory intent is not necessary to prevail even at trial. *C.f. Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998) (considering sufficiency of evidence for a § 1981 claim). "In this, as in other, areas of the law a case may be built entirely out of circumstantial evidence." *See id.* Circumstantial evidence, such as the complaint's allegation that Sheriff Smith threatened to fire Robert Juge Jr., Sterling Hebert, and James Franklin on August 20, 2015 while they attended a pep rally at the Slidell City Auditorium. Each of the three wore a shirt to the rally expressing his support for former Sheriff Strain. Plaintiffs allege that then-candidate Smith approached the three deputies and "pointed his finger . . . and said[,] 'you're fired.'" (Rec. Doc. 1 at 12). Upon being questioned about this bizarre remark, Defendant allegedly laughed and walked away. Given what is alleged in the pleadings and drawing all reasonable inferences for Plaintiffs, the Court infers this encounter as an indication that Sheriff Smith was planning vindication against his political opponents before he took office.[5]

Sheriff Smith points out that not all the Plaintiffs offer such an anecdote, but

---

[5] The problem with this factual support, says Sheriff Smith, is that he had not yet been elected and didn't actually have the power to fire the deputies at the time he made the statement. (Rec. Doc. 8-1 at 5). That argument is not persuasive. In this case, Plaintiffs must show they were improperly dismissed because of their political affiliations. Technically, Plaintiffs were not "fired" by Sheriff Smith, rather they were never re-appointed once Sheriff Smith took office on July 1, 2016—though that distinction has no legal import here. Therefore, any evidence of an unconstitutional motivation will necessarily be from the period before Sheriff Smith took office. That wrinkle is typical of suits where deputies allege retaliation for "backing the wrong horse." *See, e.g., Brady v. Ft. Bend County*, 145 F.3d 691, 713 (5th Cir. 1998) (finding that defendant sheriff's pre-election statements regarding the jobs of his rival's supporters contributed to the "ample evidentiary support" for the jury's finding that decision to not re-appoint deputies was politically motivated). In fact, the timing of the conduct more strongly suggests an improper motive. Because Sheriff Smith told the Plaintiffs "you're fired" before he was elected, and therefore presumably before he was in a position to review personnel records and make prudent staffing decisions, a political motivation is a highly plausible explanation of his statement.

this suggestion that the Court should dissect the complaint and examine every single allegation seriatim is misguided. "The complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009), *Vila v. Inter-Am. Inv., Corp.*, 570 F.3d 274, 285 (D.C. Cir. 2009) (allegations should be "[v]iewed in their totality"). Just because some Plaintiffs lack a "smoking gun" in the form of a quote by Sheriff Smith demonstrating an intent to exercise retaliation retaliate, does not mean their claims are without factual support. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

"A complaint must contain enough facts 'to raise a reasonable expectation that discovery will reveal evidence of the claim or element.'" *See Porter v. Valdez*, 424 Fed. Appx. 382, 387 (5th Cir. 2011) (quoting *Twombly,* 550 U.S. at 556). The Fifth Circuit found this standard was met in *Porter v. Valdez*, where plaintiff deputies alleged facts indicating that a defendant sheriff knew plaintiffs were outspoken supporters of the sheriff's political opponent and the sheriff transferred the plaintiffs to less prestigious positions within 40 days of the election. *Id.* (finding "a causal nexus exists for a First Amendment retaliation claim, given their transfers occurred shortly after the Sheriff's re-election"). Therefore, plaintiffs in some cases can support a claim of political retribution primarily on mere temporal proximity. *Id.* (citing *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir.1997)).

In this case there was a significant lapse of time between Plaintiffs' political activities during the campaign and any action or inaction by Sheriff Smith but only

because there was a delay of approximately seven months between the election and Sheriff Smith being sworn in on July 16, 2016. (Rec. Doc. 8-1 at 5). Because it appears from the complaint that Sheriff Smith took the retributive action as soon as he was able, this Court cannot say that the alleged protected speech and the act of dismissal were not temporally proximate. Additionally, as in *Porter*, Plaintiffs have alleged lengthy and prestigious service. *Id.*

Thus, considering the Plaintiffs' typically long lengths of service, their undeniably outspoken political activity, the timing of allegedly retaliatory acts, and the alleged statements by Sheriff Smith, the Court finds that the Plaintiffs have set forth plausible free speech retaliation claims.

### b. Qualified Immunity

Sheriff Smith argues that regardless of whether there is a sufficient factual basis for Plaintiff's claims, the claims alleged against the Sheriff in his individual capacity must nonetheless be dismissed on the grounds of qualified immunity. To defeat the qualified immunity defense at this stage, Plaintiffs must plead sufficient facts to make it plausible that Defendant's conduct: "(1) violated a 'clearly established federal constitutional right;' and (2) was not 'objectively reasonable in light of clearly established law.'" *Cox v. Kaelin*, 577 F. App'x 306, 313 (5th Cir. 2014) (per curiam) (citing *Nunez v. Simms*, 341 F.3d 385, 387 (5th Cir. 2003)). Sheriff Smith argues that the law is unclear on when a deputy may be terminated for political reasons and that Sheriff Smith therefore acted reasonably when he effectively dismissed the Plaintiffs.

Parties agree that the Fifth Circuit's opinion in *Brady v. Fort Bend County* controls in this case, they merely dispute its import. Plaintiffs assert that under *Brady* they have a clearly established right to support a candidate for the sheriff's office pursuant to the First Amendment and are thereby protected against politically motivated termination. (Rec. Doc. 16 at 11) (citing *Brady*, 145 F.3d at 713). Defendant disagrees and argues that *Brady v. Fort Bend County* states no absolute rule but sets forth a nuanced analysis which turns on a balancing test. (Rec. Doc. 8-1 at 8).

In *Brady*, a Democratic candidate for sheriff, Molina, ran against the incumbent Republican sheriff and won. 145 F.3d at 697. The plaintiffs in that case served as deputies under the incumbent sheriff and actively supported his campaign by attending rallies, posting signs, and going door to door; they did these activities off-duty and without apparent animosity towards Molina. *Id.* at 697, 709. Within a couple of months of the election, Molina notified the plaintiffs he would not be reappointing them. The plaintiffs filed suit, alleging unconstitutional political retaliation.

When Fifth Circuit heard the case in 1998, it was necessary for the court to acknowledge evolving jurisprudence in the area of free speech retaliation. *Id.* at 704-706. The Court of Appeals noted that its precedents established a spectrum of cases— on one end were cases concerning public positions where political considerations were appropriate to deciding staffing and on the other end were cases involving employees who did not perform policymaking functions and thus political considerations were improper. *Id.* at 705. Accordingly, the Fifth Circuit found it was required to weigh the

government's interest in effective service, against the deputies' interest in freedom of speech. To aid its analysis, the appellate court considered five factors.[6] *Id.* at 707. Ultimately, the Fifth Circuit concluded that given the facts before it, the factors "militate[d] strongly in favor of a conclusion that the Plaintiff's political interest in political activity in support of [the incumbent sheriff] outweighed the County's interest in efficiencies of service." *Id.* at 709.

The Court agrees that *Pickering/Connick* balancing is the appropriate analysis for determining whether an employer can properly consider an employee's political expression in making employment decisions. However, the mere fact that this flexible test governs generally, does not mean that a public employer can always claim justifiable ignorance as to whether the First Amendment protects his or her employees. *See, e.g.*, *Kinney v. Weaver*, 367 F.3d 337, 358-369 (5th Cir. 2004) (en banc) (finding only after extensive analysis that the *Pickering* test was appropriate and that it weighed in favor of plaintiff police instructors but still finding that qualified immunity did not protect defendants). While there may have been some ambiguity two decades ago as to whether a sheriff may not reappoint deputies for supporting his political opponent, sheriffs such as Defendant benefit from the clarity of *Brady*

---

[6] The factors: "(1) the degree to which the employee's activity involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; (4) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; (5) whether the activity impairs discipline by superiors or harmony among coworkers." *See Brady v. Ft. Bend County*, 145 F.3d 691, 707 (5th Cir. 1998) (citing *Click v. Copeland*, 970 F.2d 106, 112 (5th Cir.1992).

and the cases that follow it. *See Brady*, 145 F.3d at 708; *Cox*, 577 Fed. Appx. at 313 (per curiam); *see also Smith*, 318 F. Supp. 2d at 380.

Although Sheriff Smith lists the applicable factors that this Court would consider in conducting a balancing test, he does not even begin to suggest that these factors weigh in his favor. He does not imply that the Plaintiffs were abusive, or that their political expression at all hampered their performance as deputies. Thus, because *Brady* is indistinguishable from the circumstances of this case, it cannot be said that Sheriff Smith was not given "fair warning" that his alleged conduct violated the constitution. *See Kinney*, 367 F.3d at 350, 371-72 ("Although . . . reasonable officials might not always be able to predict the outcome of a balancing test such as that used in *Pickering* cases . . . the illegality of [Sheriff Smith's] conduct is sufficiently clear that [he] can fairly be said to have been on notice of the impropriety of [his] actions."). Qualified immunity is inapplicable.

## II.   STATE LAW CLAIMS

Plaintiffs' second claim is that they are each entitled for damages on the basis of a state law provision: La. Stat. Ann. § 23:961. That statute provides:

> [N]o employer having regularly in his employ twenty or more employees shall make, adopt, or enforce any rule, regulation, or policy forbidding or preventing any of his employees from engaging or participating in politics. . . . No such employer shall . . . attempt to coerce or influence any of his employees by means of threats of discharge or of loss of employment in case such employees should . . . participate in political activities of any nature or character.

La. Stat. Ann. § 23:961. Violation of the law mandates a criminal penalty—a fine between $100 and $1000 and a possible prison sentence of up to 6 months. *Id.* The

statute notes that, "[n]othing herein contained shall in any way be construed to prevent the injured employee from recovering damages from the employer as a result of suffering caused by the employer's violations of this Section." *Id.*

Sheriff Smith argues that this statute provides no vehicle for relief in this case because, according to Louisiana law, the deputies were never "his employees" as is specifically required by the statute. (Rec. Doc. 8-1 at 10). He relies on a decision from the Louisiana Fourth Circuit, *Boyer v. St. Amant*, 364 So. 2d 1338, 1339 (La. App. 4th Cir. 1978). In that case a newly-elected sheriff failed to re-appoint deputies who had campaigned for his political opponent, the incumbent sheriff. *Id.* The plaintiff-deputy argued that the sheriff's termination of his employment was part of a systematic political purge of all those who failed to support the sheriff and that such action violated § 23:961. *Id.* In analyzing the law, the court concluded that deputies who were not reappointed by a newly-elected sheriff could not sustain a claim for retaliation under § 23:961. *Id.* The court's holding was based on three premises. First, the *Boyer* court determined that deputies were appointees not employees, and without an employer-employee relationship § 23:961 could not apply. Second, there was no cause of action for wrongful discharge because the deputy was not fired— plaintiff was merely not re-appointed. Third, the deputy had no contractual rights in his employment, therefore he has no right to expect nor basis for expecting continued employment. *Id.* at 1341.

Few courts have analyzed § 23:961, and *Boyer* is the only case to consider the statute with facts similar to those alleged here. Plaintiffs urge this Court disregard

*Boyer* as unpersuasive. They challenge the premise that deputies are "appointees" rather than employees and point out that Louisiana courts have long recognized Louisiana sheriffs as employees in the context of vicarious liability. *See, e.g., Nall v. Parish of Iberville*, 542 So. 2d 145 (La. App. 1 Cir. 1989), *Kahl v. Baudoin*, 449 So. 2d 1334 (La. 1984), *Jenkins v. Jefferson Parish Sheriff's Office*, 402 So. 2d 669, 671 (La. 1981). As have U.S. courts in certain federal contexts. *See Adams v. McDougal*, 695 F.2d 104 (5th Cir. 1983) (holding that the employment relationship between a sheriff and his deputy was sufficient for a § 1981 claim),[7] *Smith*, 318 F. Supp 2d 366, 379 (E.D. La. 2004) (concluding that the sheriff qualified as an employer for the purposes

---

[7] The Fifth Circuit's opinion in *Adams v. McDougal* is particularly significant because Judge Wisdom, writing for a unanimous panel, reversed a district court decision which had relied on the reasoning in *Kyles v. Calcasieu Par. Sheriff's Dep't*, 395 F. Supp. 1307, 1310 (W.D. La. 1975). *Adams*, 695 F.2d at 105. The *Kyles* court had applied state law and concluded that a "plaintiff [deputy] was not an 'employee' of the Calcasieu Parish Sheriff's Office" and therefore the court lacked jurisdiction to hear the deputy's complaints under Title VII and section 1981. *Kyles*, 395 F. Supp. at 1309, 1312. In *Adams*, the Fifth Circuit found this adherence to state law misplaced: "To the extent that the *Kyles* court felt constrained by a strict reading of Louisiana law regarding the status of deputy sheriffs, that decision is incorrect." *Adams*, 695 F.2d at 107-108. Acknowledging that section 1981 must be construed according federal and not state law, the Fifth Circuit concluded that "despite the indefinite tenure of the job of deputy sheriff, the sheriff and his deputies had expectations arising from the deputy's employment." *Id.* at 108.

In determining whether § 23:961 applied to deputies, the *Boyer* court essentially adopted *Kyle's* reasoning as its own. *Boyer*, 364 So. 2d at 1340-41. It then concluded, "In the absence of an employer/employee relationship, R.S. 23:961 cannot be applicable." *Id.* at 1341. The court further opined, "Without any contractual rights in his employment, a deputy, or other political appointee, *has no right to expect nor basis for expecting continued employment*." *Id.* (emphasis added). This reasoning is obviously at odds with the Fifth Circuit's in *Adams*, where the Court found the deputies *did* have certain expectations arising from the deputies' employment. *Adams*, 695 F.2d at 108 ("The sheriff promised to pay his deputies a stated salary. In return the deputies promised to perform their jobs.").

However, the Fifth Circuit's strong disapproval of the reasoning of *Kyles*, which the *Boyer* court depended upon, arguably only goes as far as federal law is concerned—the Fifth Circuit concluded that the *Kyles* court was incorrect in finding it was bound by state law, not that the district court had interpreted state law incorrectly. Thus, *Boyer's* application of *state law principles* to *state law* may be said to remain unchallenged. In any case, for reasons explained above, the Court finds it unnecessary to reexamine whether deputies are employees or appointees for purposes of state law.

of a Title VII claim).

However, assuming that Plaintiffs were "employees" for purposes of this statute, the particular language of § 23:961 presents another obstacle to applying the statute in this case. According to the text of the statute, Plaintiffs must show not just that they were employees but the *Defendant's* employees. La. Stat. § 23:961 ("No such employer shall . . . attempt to coerce or influence any of *his* employees."). As noted above, none of the Plaintiffs were ever employed by Sheriff Smith; as such, he argues that Plaintiffs were at most his *potential* employees. The Court noted above that this distinction—between termination and failing to reappoint—is meaningless where the First Amendment is concerned. *Warnock v. Pecos County, Tex.*, 116 F.3d 776, 779 n.1 (5th Cir. 1997) (collecting cases). However, the Court is now considering a state statute and state law controls. Moreover, although this is a civil suit, § 23:961 carries criminal penalties[8] and "criminal statutes are given a narrow interpretation and any ambiguity in the substantive provisions of a statute as written is resolved in favor of the accused." *State v. Carr*, 761 So. 2d 1271, 1274 (La. 2000). This Court is empowered to diverge from *Boyer* but only if the Court is convinced that is what the Louisiana Supreme Court would do. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2005). Upon a careful reading of the § 23:961, the Court is not convinced the Louisiana

---

[8] A court cannot waffle between opposing interpretations of a statute depending on a civil or criminal context, so, civil defendants may sometimes benefit from the rule of lenity. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n. 8 (2004) ("Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."); *see also Joffe v. Google, Inc.*, 746 F.3d 920, 935 (9th Cir. 2013).

Supreme Court would apply the statute in a case such as this one, where a defendant sheriff refused to re-appoint deputies. "[I]nterpretation of any statutory provision begins with the language of the statute itself." *Arabie v. CITGO Petroleum Corp.*, 89 So. 3d 307, 312 (La. 3/13/12). "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code art. 9. As Sheriff Smith notes, a common sense reading of the statute does not make clear a sheriff would be liable for policies or conduct affecting deputies he never hired. Section 23:961 repeatedly hinges the possibility of criminal penalties on an employer affecting the political activities or affiliations of "his employees." This Court does not understand the word "his" preceding "employee" to be meaningless. *See Oubre v. Louisiana Citizens Fair Plan*, 79 So. 3d 987, 997 (La. 2011), (recognizing that every word in a statute is to be given effect). Rather, the Court interprets the phrase "his employees" to require a direct relationship between the employer and the employee be demonstrated before § 23:961 can applied. No such direct relationship— whether it be categorized as employer-employee or appointer-appointee—existed between Sheriff Smith and Plaintiffs. *See Boyer*, 364 So. 2d at 1341. Given, that "a person should not be criminally punished unless the law provides a fair warning of what conduct will be considered criminal," the Court is persuaded that the statute should not be considered applicable against a sheriff who fails to re-appoint deputies hired by a previous administration. *Carr*, 761 So. 2d at 1274.

Plaintiffs suggest that finding § 23:961 inapplicable here would have far-

ranging consequences but the Court is unpersuaded that its holding will unleash a parade of horribles on the deputy sheriffs of Louisiana. First, § 1983 obviously already exists as a powerful deterrent against the alleged conduct of Sheriff Smith. Second, it is Plaintiffs who ask this court to upset the status quo by diverging from Louisiana case law that has stood for forty years. Given the specific language of the statute, the current state of Louisiana law, and Louisiana's principles of interpretation, the Court concludes that Plaintiffs' claims pursuant to § 23:961 must be dismissed.

## III. PLAINTIFF'S CLAIMS UNDER THE FAMILY MEDICAL LEAVE ACT

Finally, Plaintiffs Bryan Moore and Cheryl Hanson allege that their terminations violate the Family Medical Leave Act. These Plaintiffs took leave pursuant to the Act before their commissions expired and afterwards were informed in one way or another not to return to work by the new administration. (Rec. Doc. 1 at 26).

The FMLA requires employers with at least fifty employees to provide up to twelve weeks of job-protected, unpaid leave to any employee who has worked at least twelve months for that employer. 29 U.S.C. § 2611, 29 C.F.R. §825.100. An employee returning from FMLA leave has a right to reinstatement to his position and the attendant benefits of employment. 29 CFR § 825.216. However, nothing in the FMLA is to be construed to entitle any employee to "any right, benefit, or position of employment" other than that "which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3). The FMLA is clear that "[a]n employer must be able to show that an employee would not otherwise have been

employed at the time reinstatement is requested in order to deny reinstatement to that employee." 29 CFR. § 825.216. However, "[if] an employee was hired for a specific term . . . the employer has no obligation to restore the employee if the employment term . . . is over and the employer would not otherwise have continued to employ the employee." 29 CFR § 825.216(a)(3).

Citing this language, Sheriff Smith repeats his refrain that, according to *Boyer*, Plaintiffs as Louisiana deputy sheriffs have no reasonable expectation of continued employment because their commission ended with former Sheriff Strain's. Thus, Sheriff Smith argues, that Plaintiffs are attempting to "circumvent application of [their] contract" by taking medical leave. (Rec. Doc. 8-1 at 12). This assertion is without merit. Plaintiffs do not claim that Sheriff Smith did not have authority not to reappoint them once they took leave; they claim that the FMLA merely constricts Sheriff Smith's discretion to not reappoint them *on the basis* that they took their federal medical leave. As noted above, federal courts have long rejected the notion that sheriffs enjoy unfettered discretion to dismiss deputies. *See Brady*, 145 F.3d at 703 ("The lack of a reasonable expectation of continued employment is not sufficient to justify dismissal based solely upon an employee's private beliefs." (quoting *Branti v. Finkel*, 445 U.S. 507, 512 (1980))). Just as a sheriff's right to terminate employees is limited by the Constitution, it is also limited by federal statutory law. While Sheriff Smith may have had plenary authority not to reappoint Plaintiffs under state law, "the discretion of the sheriff to dismiss a deputy must yield to" to the Plaintiffs' right not to be terminated for taking medical leave. *Jolliffe v. Mitchell*, 971 F. Supp. 1039,

1042 (W.D. Va. 1997) ("Therefore, while plaintiff[s] may have had no property interest in [their] continued employment in and of itself, [they] did have a property interest, created by the FMLA, in not being dismissed because of [their] medically necessary absences.").

Sheriff Smith also reiterates that the Plaintiffs are not entitled to relief because the Plaintiffs' were never *his* employees—they were former Sheriff Strain's. While this argument had merit regarding La. Rev. Stat. § 23:961, it is not necessarily compelling with regard to the FMLA, because the FMLA's governing regulations explicitly define "employer" to include "any successor in interest of a covered employer." 29 C.F.R. § 825.104(a). In determining whether Sheriff Smith qualifies as a successor-in-interest, the Court once again finds itself in another unsettled area of law where there is little guidance from the circuit courts.

Sheriff Smith argues that he does not qualify as a successor-in-interest per the Fifth Circuit's holding in *Powe v. May*, 62 F. App'x 557 (5th Cir. 2003) (per curiam) (unpublished). In *Powe*, the Fifth Circuit considered the claim of a deputy sheriff who sued the current sheriff for violations of the Fair Labor Standards Act committed by the former sheriff, whom Powe had worked for. *Id.* at *1. The Fifth Circuit assumed without deciding that the successor-in-interest doctrine applied to the FLSA. The Court noted that three criteria were appropriate to determining imposing successor liability: "(1) a substantial continuity of business operations from the previous entity to its successor; (2) notice to the successor; and (3) the successor's ability to provide relief." *Id.* The panel then concluded, "There is insufficient continuity between Sheriff

Thompson's administration and Sheriff May's administration to justify the imposition of successor liability." *Id.*

Plaintiffs urge this Court to rely not on *Powe*—it is not binding on this Court—but the Sixth Circuit's opinion, *Cobb v. Contract Transp.*, Inc., 452 F.3d 543, 546 (6th Cir. 2006), instead. Cobb, the plaintiff in that case, was a truck driver who drove several delivery routes for a Texas trucking company which had a contract with the U.S. Postal Service to deliver mail. *Id.* The Texas trucking company lost the contract on one of Cobb's long-haul routes to an Iowa trucking company. However, once the Iowa trucking company won the bid, it hired Cobb to drive the very same route. Cobb became sick with severe stomach pain a few months into working for his new employer and he had to miss work to have his gall bladder removed. Cobb's new employer sent Cobb a letter informing him he was terminated because he had "made himself unavailable for work." *Id.* Cobb sued, alleging his termination violated the FMLA. The district court dismissed Cobb's complaint because he had not worked for the Iowa trucking company for more than 12 months and was therefore not an "eligible employee." *Id.* at 547-48. The district court found that the three years Cobb had worked for the Texas trucking company could be considered because there was no merger or transfer of assets between the two trucking companies and therefore no continuity of ownership or control between Cobb's employers. *Id.*

The Sixth Circuit reversed, finding that a transfer of assets was not required. *Id.* at 550. Rather, the Court found that Congress's intent was to adapt the doctrine of successor liability from federal labor law cases to the FMLA. *Id.* The regulations

governing the FMLA support this conclusion because they implore courts to use a list of factors derived under federal labor law to determine successor liability:

(1) Substantial continuity of the same business operations;

(2) Use of the same plant;

(3) Continuity of work force;

(4) Similarity of jobs and working conditions;

(5) Similarity of supervisory personnel;

(6) Similarity in machinery, equipment, and production methods;

(7) Similarity of products and services; and

(8) The ability of the predecessor to provide relief.

29 C.F.R. § 825.107. As 29 C.F.R. § 825.107 notes, these are the factors also used in cases brought under Title VII and the Vietnam Era Veteran's Adjustment Act—which were themselves informed by federal labor law. *See Cobb*, 452 F.3d at 550-51. "However, unlike Title VII, whether the successor has notice of the employee's claim is not a consideration." 29 C.F.R. § 825.107. Upon an expansive review of federal labor law, the Sixth Circuit rejected the Defendant's assertion that these factors could only be considered after finding there was a transfer of assets. *Id.* at 554-57. With that obstacle removed, the Sixth Circuit quickly found that the factors weighed in favor of Cobb. *Id.* at 556-57. ("Plaintiff has carried U.S. mail on the exact same route, with the exact same relay stops, for the past three years. In reality, it as if Plaintiff works for the USPS and not for one particular trucking company. Only the management, not the job, has changed.").

The Court finds *Cobb's* reasoning to be very persuasive. The Court agrees with the Sixth Circuit that determining Sheriff Smith is an "eligible employer" requires consideration of the factors enumerated in 29 C.F.R. § 825.107. However, the record is not sufficiently developed to evaluate the factors at this time. Therefore, the Court cannot say that Plaintiffs have failed to state a plausible claim under the FMLA. *See Jolliffe*, 971 F. Supp. at 1042. Thus, dismissal is unwarranted.[9]

## CONCLUSION

Accordingly,

**IT IS ORDERED** that *Motion to Dismiss for Failure to State a Claim* **(Rec. Doc. 8)** is **GRANTED in part** to **DISMISS** Plaintiffs' claims pursuant to La. Rev. Stat. §23:961 and **DENIED** as to all remaining claims.

New Orleans, Louisiana, this 19th day of December, 2018.

_____

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[9] Although Sheriff Smith raises the issue of qualified immunity as a defense against FMLA claims alleged against him in his individual capacity, the issue is moot because Plaintiffs allege their FMLA claims against Sheriff Smith only in his official capacity.